UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   4:14-CR-247 RLW TIA |
| | ) | |
| BRYAN BINKHOLDER, | ) | |
| | ) | |
| Defendants. | ) | |

## GOVERNMENT'S NOTICE REGARDING "VICTIM STATUS HEARING"

The United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Stephen Casey, Assistant United States Attorney for said District, notifies the Court that pursuant to the Guilty Plea Agreement between the parties, the United States of America will call Michael Ursch ("Ursch") to testify regarding his status as a victim of Defendant's criminal conduct.   The United States further reserves the right to call Special Agent Carrie Carlson (FBI) to provide context to Ursch's testimony if necessary.

The United States asserts that Ursch is a victim because he was an investor in the hard money lending program just like the other investors included as victims in the Guilty Plea Agreement.   Like the other investors, Ursch made substantial investments into the hard money lending program.   Like the other investors, Ursch has promissory notes with the hard money lending entities signed by the Defendant that will be due in 2014 and 2015 and will not be repaid. Like the other investors, the Defendant commingled Ursch's investment with funds from other investors.   The Defendant used the commingled funds to pay personal and business expenses,

purchase personal real estate, pay promised interest to other investors, or repay certain investors their principle.  Even though he was the Defendant's partner, Ursch was unaware the Defendant was using his or investor funds in this manner.  Finally, the Defendant made false representations or material omissions that lulled Ursch into continuing with the hard money lending program and even providing additional funds when, in fact, the hard money lending program was insolvent or experiencing cash shortfalls.

Ursch met with government investigators on a number of occasions regarding the hard money lending program.  Ursch met with investigators under the terms of an immunity letter.  Ursch also provided extensive documentation to investigators.  The United States provided Ursch's documentation as well as reports summarizing Ursch's statements to investigators to Defendant's attorneys.  The United States agrees that the reports are accurate summaries of Ursch's statements to investigators.

The United States attaches hereto (and references below) the exhibits it intends to use at the hearing.  While the rules of evidence do not apply pursuant to Rule 1101, the exhibits have been previously provided to the Defendant's attorneys and the United States does not anticipate any objections to their authenticity or admissibility.

The United States anticipates Ursch will testify as follows:

<u>Early Relationship</u>

1. At some point prior to 2006, Defendant became Ursch's financial advisor.  In this capacity, Defendant acquired a complete view of Ursch's assets and financial situation.  At this point, Defendant advised Ursch related to traditional investment vehicles and developed Ursh's trust.

2. At some point in approximately 2005 or 2006, the Defendant approached Ursch

and convinced him to partner with Defendant to purchase, rehabilitate and sell residential real estate for investment purposes. At Defendant's behest, Ursch obtained a real estate license.

3. Ursch put up the funds to purchase the properties. The Defendant was responsible for rehab costs. However, due to a downturn in the housing market, the properties were converted to rental units owned by Midwest Redevelopment. Ursch quitclaimed his interest in the properties to Midwest Redevelopment at the urging of Defendant.

4. Midwest Redevelopment was controlled 51-49% by the Defendant and Ursch respectively. The Defendant was responsible for the books and taxes; Ursch was responsible for property management and upkeep. Rental income was supposed to pay the liens on the properties.

Hard Money Lending

5. In approximately 2008, Ursch and the Defendant began the hard money lending program. Under the program, borrowers who wanted to purchase and redevelop real estate that could not obtain traditional financing from traditional banks would receive a short-term, high interest loan. Borrowers would also pay an origination fee for the right to borrow funds.

6. Ursch was to provide the funds for the loans and handle the properties while the Defendant was to generate borrowers and manage the money. Defendant represented to Ursch that he would invest his own funds in the enterprise as well.

7. Mark Twain Properties ("MTP") was the original entity through which the Defendant and Ursch made hard money loans. Ownership of MTP was split 51-49, with the Defendant controlling the majority. Ursch was to receive 49% of origination fees as well as 10% interest on his investment. MTP was to receive 51% of the origination fees and the balance of the interest paid by borrowers. The Defendant was not supposed to receive any funds and

would receive 51% of MTP's later profits. The Defendant represented to Ursch that he had other sources of income.

8. Soon thereafter, the Defendant approached Ursch to expand the hard money lending program to other investors. The idea was to create a hard money lending bank. The Defendant wanted Ursch to invest in the expansion. The Defendant set up Lending Alternatives I and Lending Alternatives II ("LA I" and "LA II"). The Defendant and Ursch split ownership of both companies 51-49%, respectively. Again, the Defendant was to recruit other investors, handle investor relations and manage the money. Ursch was to invest more funds, handle the properties and perform borrower relations. The Defendant represented to Ursch that he would recruit clients of his investment advising business to become investors.

9. Altogether, Ursch invested $320,000 into MTP, see Exhibit U-1 (MTP Promissory Notes) (the interest rate was subsequently adjusted from 10% to 8% and new notes were signed). Ursch invested $550,000 into LA I, see Exhibit U-2 (LA I Promissory Notes); and $100,000 into LA II, see Exhibit U-3 (LA II Promissory Note). Ursch made a total of $130,000 in other investments at the behest of the Defendant. See Exhibit U-4 (Other Promissory Notes).

10. The Defendant made some repayments to Ursch, including approximately $25,000 on the LA I investment in 2011 and repayments of certain capital injections.

Day to Day of the Lending Program

11. Ursch did not actively manage or monitor the main accounts, payments or transfers made by the Defendant. Ursch's job was to manage the properties and the Defendant's job was to manage the books.

12. Ursch had access to most bank accounts associated with the hard money lending program. Ursch did not have access to certain accounts used by the Defendant. As loans were

made, Ursch would set up additional accounts specific to each property.   Ursch would then transfer escrow or rehab funds from the main accounts to these property accounts so that he could allocate and control construction draws.   At times, there were insufficient funds in the main accounts to make the necessary transfers to the property accounts.   In those instances, Ursch contacted the Defendant.   The Defendant represented to Ursch that after a period of time, the necessary funds would be there.   Ursch did not know from where the funds came.

13. From time to time, Ursch and the Defendant would talk about the health of the lending program.   The Defendant represented to Ursch (like the other investors) that things were generally going well.   See Exhibit U-5 (Letter to Investors).

14. However, at certain times, Ursch learned of potential issues which prompted questions for the Defendant regarding the health of the program.   See Exhibit U-6 (MO SOS E-Mail); Exhibit U-7 (Accountant E-Mail).   Defendant assured Ursch that these were minor issues and/or that he had the matter under control.

15. At certain times, Ursch became aware of funding shortfalls and cash flow problems.   In those instances, at the Defendant's behest, Ursch made additional investments, short term capital injections, or mortgaged rental properties.   The Defendant assured Ursch that these shortfalls were isolated events caused by delayed payments from certain borrowers or other factors.

16. Ursch believed the Defendant not just because of their trusting relationship and working relationship, but also because Ursch received consistent interest payments and the Defendant appeared to have a comfortable lifestyle.

17. Ursch was unaware that Defendant used investor money, including Ursch's, to pay personal and business expenses, purchase personal real estate, pay promised interest to other

investors, or repay certain investors their principle.

18.     Ursch met with government investigators a number of times regarding the hard money lending programs.   Prior to one such meeting, the Defendant provided Ursch with a series of "talking points" to guide what Ursch told investigators.   See Exhibit U-8 (Talking Points).

Wors Repayment

19.     In 2013, Defendant approached Ursch to provide funds to pay off another investor, Rick Wors.   See Exhibit U-9 (Wors E-mail).   Defendant represented to Ursch that Wors needed cash and that Ursch would be imminently repaid from the sale of two properties.   Defendant represented that the two properties had pending sales contracts.   As a result, Ursch provided $130,000 to the Defendant.   The two properties did not have pending sales contracts at the time and were sold later as part of the Hamilton Investments deal (described below).

20.     Ursch has not been repaid the $130,000.

Hamilton Deal

21.     Just prior to the Indictment, the Defendant sold certain properties to Hamilton Investments in a seller-financed transaction.   The Defendant approached Ursch to approve the deal.   The Defendant represented to Ursch that, after the deal was final, he had a buyer for the note that would pay enough cash to repay investors and Ursch.   The Defendant also told Ursch that the deal would help him with the government investigation.   Ursch agreed to the deal and, at the Defendant's request, appeared at the closing to sign the necessary documents.   The Defendant told Ursch he could not appear at the closing because of the ongoing investigation.

22.     After the deal was executed, the Defendant represented to Ursch that the potential sale of the note fell through.   See Exhibit U-10 (Binkholder E-mail).

Special Agent Carlson, to the extent necessary, will testify as follows:

1. It appears Ursch is owed approximately $1,075,000.

2. Ursch's investments were commingled with other investor funds. The commingled funds were spent by the Defendant in a manner described in the Guilty Plea Agreement.

3. The Defendant dealt with the issues raised in Exhibit U-7 by firing the accountant.

4. There were not pending sale contracts on the properties earmarked by the Defendant to repay Ursch for paying off Rick Wors.

4. If necessary, Special Agent Carlson will describe the results of the investigation related to the Hamilton Investments deal.

WHEREFORE, the United States asserts for the foregoing reasons that Michael Ursch is a victim in the above captioned case, and that the total loss attributable to the Defendant for this victim is approximately $1,075,000. The United States requests that the Court make such findings and for such other relief the Court deems just and proper.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

 /s/ Stephen Casey
STEPHEN CASEY #58879MO
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

                                                                  /s/ Stephen Casey  
                                             STEPHEN CASEY #58879MO  
                                             Assistant United States Attorney